THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FRANK F. VOLKMAR, Defendant-Appellant.

Fifth District   No. 5—87—0282

Opinion filed May 8, 1989.

Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, and Lori J. Lanciani, of State Appellate Defender's Office, of Springfield, for appellant.

Paul H. Hillis, Jr., State's Attorney, of Salem (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOWERTON delivered the opinion of the court:

Defendant, Frank Volkmar, was convicted of murder in violation of section 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(2)). He did not pull the trigger, but he obtained the gun and actively participated in planning the murder.

The victim, suspected of being an informant by defendant and his fellow thugs, was shot in the head two or three times while facedown on the ground.

Several days after the murder, defendant and the others went back to the body and burned it to a crisp.

Defendant was sentenced to 60 years.

We affirm.

Defendant first argues that the trial court erred in denying his lawyer's motion to withdraw. Scott Wilzbach, defendant's lawyer, had claimed he had a lawyer-client relationship with State's witness Keith Kirgan and a social relationship with Kirgan's parents, and argued that these relationships would make difficult cross-examination of Kirgan.

The circuit court of Marion County denied Wilzbach's motion and found that: (1) the motion was not timely; (2) Wilzbach was not representing Kirgan in any matter at the time; (3) Wilzbach did not claim that Kirgan's cross-examination would involve information obtained from him in confidence; and (4) no actual conflict was shown.

The circuit court's comments were pregnant with implications about timeliness:

"I'm not saying that you're trying to delay any trial, but I don't think one week prior to the trial date is the time to make

a Motion to Withdraw, particularly based on at least two witnesses who were known from the day you entered the case were going to be called by the State."

The record supports the trial court.

■■ Wilzbach argued that he had represented Kirgan in the past, but conceded that he did not represent him during this trial. Being a former lawyer of a State's witness creates no conflict of interest, notwithstanding the possibility of representation in the future. (*People v. Miller* (1977), 46 Ill. App. 3d 882, 886, 361 N.E.2d 373, 376.) But even more noteworthy, defendant took the witness stand and admitted the truth of Kirgan's testimony. Therefore, there was no need to attack Kirgan's believability in cross-examination. In fact, it seems that Wilzbach, himself, did not believe that his cross-examination of Kirgan had been hampered by these relationships because he omitted this issue from his post-trial motion.

Defendant complains that the circuit court erred in admitting statements of coconspirators. Of these statements, some were made before the crime, others after.

We first take up the statements of coconspirators that were made before the murder.

Paul Potts was called by the prosecution in its case in chief. He testified to statements made to him, not by defendant, but by Gary Daubman. Potts testified as follows:

"Q. What kind of conversation did you have with Gary then?

A. I told Gary what I thought about the whole situation and I said, Man, this, it's fucked up.' I said, This whole thing is fucked up.' I said, Why don't we get the hell out of here.'

Q. What did Gary say?

A. He agreed.

Q. Okay.

A. He says he is having bad feelings about the whole situation. He said it is nothing like Frank said. He said Frank never said anything about going to, meeting some broad on a motel ***. And, and he says I am getting bad vibes on the whole thing ***."

Put into context, what Potts and Gary Daubman did not like was defendant going to a motel where the victim's girlfriend had been lured. She had been told that she needed to stay there and have sex in order to help the victim. Potts and Daubman did not like the additional person, the victim's girlfriend, having knowledge of some of the facts and being able to testify.

■ Potts' testimony about what Daubman had told him as set out

above is admissible against defendant even though it was made out of his presence because Daubman was a coconspirator and what he said related to the conspiracy. (*People v. Meagher* (1979), 70 Ill. App. 3d 597, 601, 388 N.E.2d 801, 803.) Potts and Daubman were debating whether to continue in the plot to kill. As soon as Potts had testified to the conversation, he then testified how they became active again in the plot by snorting cocaine with another of the conspirators and looking at guns, one of which was to be the murder weapon. Therefore, the conversation was in furtherance of the conspiracy, because in full context it showed reflections, reluctance, then debate, and then decision to participate nevertheless.

Defendant complains that it was error to admit the testimony of Potts, Thaxton, and Ray Volkmar that they went to defendant's house, and there, with defendant present, Daubman had told them how he had killed the victim. Also, Thaxton testified that on that same occasion, he saw the gun that he had previously given to defendant and that defendant had asked him if he wanted it back. Defendant further complains that it was error to let Thaxton testify that Daubman was talking to them about someone he had shot, and defendant then had told Daubman to "shut up."

■ This testimony of Potts, Thaxton and Ray Volkmar was admissible. The portions of their testimony wherein they related that defendant had asked Thaxton if he wanted the gun back and had told Daubman to shut up as he talked about having killed someone are admissible as showing guilty knowledge. *People v. Johnson* (1975), 32 Ill. App. 3d 36, 47, 335 N.E.2d 144, 154.

■ Defendant next argues that section 115—10.1 of the Code of Criminal Procedure of 1963, under which was admitted as substantive evidence a prior inconsistent statement of defendant's brother, Ray Volkmar, is an unconstitutional infringement on the power of the judiciary to determine the admissibility of evidence. Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1.

This issue was not included in defendant's post-trial motion.

This issue is waived. See *People v. Friesland* (1985), 109 Ill. 2d 369, 374-75, 488 N.E.2d 261, 262-63.

Defendant complains that the trial court erred in refusing to admit prior inconsistent statements of State's witness Potts as substantive evidence.

This issue was not included in defendant's post-trial motion.

This issue is waived.

Defendant complains that remarks made by the prosecutor in his opening statement constituted an impermissible expression of the

prosecutor's personal belief regarding the veracity of Potts.

Defendant did not object during the trial.

This issue is waived. *People v. Skorusa* (1973), 55 Ill. 2d 577, 585, 304 N.E.2d 630, 634.

This issue also was not included in defendant's post-trial motion.

This issue is waived.

Defendant complains that the prosecutor acted improperly by asking defendant if the testimony of other witnesses was wrong or mistaken.

Defendant did not object to this during trial.

This issue is waived. *People v. Killebrew* (1973), 55 Ill. 2d 337, 341, 303 N.E.2d 377, 380.

This issue also was not included in defendant's post-trial motion.

This issue is waived.

Defendant complains that he was prejudiced by the prosecutor's questions during cross-examination concerning a 1980 conviction for auto theft.

Defendant did not object during trial.

This issue is waived. *People v. McCrimmon* (1967), 37 Ill. 2d 40, 47, 224 N.E.2d 822, 826.

This issue also was not included in defendant's post-trial motion.

This issue is waived.

Defendant complains that the trial court improperly considered the victim's impact statement and the testimony of the victim's father.

Defendant did not object during the sentencing hearing.

This issue is waived. *People v. Stufflebean* (1979), 73 Ill. App. 3d 801, 804, 392 N.E.2d 414, 417.

■ Defendant complains that imposition of an extended-term sentence was not justified. A review of the presentence report causes us to believe he is wrong and the circuit court right. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.

Defendant complains that it is improper for the trial court to consider deterrence as a factor in aggravation.

■ We play one more riff across this opinion simply to try to teach the tune. Defendant's claim that deterrence is not a proper aggravating factor in sentencing strikes us as quite discordant. We do not know from which hymnal he sings, but from wherever, neither hymnal nor hymn matches ours. The law is clear. The sentencing statute mandates the circuit court to consider deterrence. This court has upheld that statutory mandate. The reader, defendant included, is directed thus: Read Illinois Revised Statutes, 1985, chapter 38, para-

154

graph 1005—5—3.2(a)(7) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(a)). Then read *People v. Griffin* (1981), 94 Ill. App. 3d 165, 167, 418 N.E.2d 817, 818; *People v. Floyd* (1987), 160 Ill. App. 3d 80, 87, 512 N.E.2d 1378, 1384.

The circuit court is affirmed.

Affirmed.

RARICK and CHAPMAN, JJ., concur.